**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| **NURUN NAHAR and MASIAT HOSSAIN,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**MARCO RUBIO, in his official capacity, Secretary, U.S. Department of State, JULIE STUFFT, in her official capacity, Senior Official, Bureau of Consular Affairs and MEGAN BOULDIN, in her official capacity, Deputy Chief of Mission, United States Embassy, Dhaka, Bangladesh,**<br><br>**Defendants.** | **CIVIL ACTION FILE**<br><br>**NO. 1:25-CV-210-MHC** |

**<u>ORDER</u>**

This case comes before the Court on Defendants' Motions to Dismiss [Docs. 7 and 19].

## I. BACKGROUND[1]

Plaintiff Nurun Nahar ("Nahar") is a naturalized U.S. citizen and Plaintiff Masiat Binte Hossain ("Hossain") is Nahar's unmarried daughter and a citizen of Bangladesh. Am. Compl. ¶¶ 5-6. Plaintiffs filed the above-styled mandamus action on January 16, 2025, as a result of Defendants' failure to adjudicate Plaintiff Hossain's family preference visa application within a reasonable period of time. Id. ¶¶ 1-2. Specifically, Plaintiffs alleges that Hossain's visa application "remains pending for over two years and three months (over 27 months or 847 days) without the scheduling of Plaintiff HOSSAIN's required interview," and Defendants have "failed to forward the matter over to the U.S. Embassy in Dhaka, Bangladesh, for the scheduling of an interview and issuance of an immigrant visa." Id. ¶ 2. Plaintiffs contend that Hossain's visa application "has been pending for an unreasonably long period of time" because "Defendants have conducted the initial investigation and have sufficient information and documentation about Plaintiffs to schedule them for an interview and adjudicate the Application." Id. ¶¶ 30-31.

[1] The Complaint was amended on January 23, 2025, and is the operative complaint in this case. Am. Compl. [Doc. 3]. Because this case is before the Court on Defendants' Motion to Dismiss, the facts are presented as alleged in the Amended Complaint. See Silberman v. Miami Dade Transit, 927 F.3d 1123, 1128 (11th Cir. 2019) (citation omitted).

Plaintiffs filed this lawsuit "to compel Defendants and those acting under them to take action on the Application." Id. ¶ 4. Specifically, Plaintiffs seek an order from this Court "mandating a time certain to forward Plaintiff HOSSAIN's Application to the Embassy and schedule the same for an interview." Id. ¶¶ 1-2, Prayer for Relief.

### A. Statutory and Regulatory Background for Family Preference Visas

The Immigration and Nationality Act ("INA") governs the process for foreign nationals to obtain visas for temporary or permanent residence in the United States. 8 U.S.C. §§ 1101, et seq. Immigrant visas are intended for foreign nationals who seek to live permanently in the United States. 8 U.S.C. §§ 1101(a)(16), (2). There are three types of immigrant visas: (1) family-sponsored; (2) employment-based; and (3) diversity, which are drawn annually from a lottery. 8 U.S.C. § 1151. This case concerns family-sponsored visas, which are divided into two categories: (1) immediate relative and (2) family-sponsored preference visas. Id. Immediate relative visas are for unmarried minor children, spouses, and parents of adult United States citizens. See 8 U.S.C. § 1151(b)(2)(A)(i) (defining "immediate relatives"). There is no cap on the number of immediate relative visas that are issued by the United States government on an annual basis. 8 U.S.C. § 1151(b) (exempting immediate

relatives from the numerical caps applied to other family-sponsored visa categories). Family-sponsored preference visas for non-immediate relatives, on the other hand, are grouped in the following sub-categories and subject to annual numerical limits set by Congress:

> F1: the unmarried, adult sons and daughters of United States citizens (first preference);
>
> F2A: the spouses and unmarried, minor children of Legal permanent residents (second preference "A");
>
> F2B: the unmarried, adult sons and daughters of permanent resident aliens (second preference "B');
>
> F3: the married sons and daughters of United States citizens (third preference);
>
> F4: the brothers and sisters of United States citizens (fourth preference).

8 U.S.C. § 1153 (a)(1-4).[2] Congress, through the INA, determines the number of family-sponsored preference visas that are available for issuance each year in the four sub-categories. Id.; Kanapuram v. Dir., US Citizenship & Immigr. Servs., 131

[2] Plaintiffs are seeking a F2B family preference visa for Hossain as the unmarried adult child of Nahar. See generally, Am. Compl.; see also Decl. of Anya Krivtsun (Mar. 28, 2025) ("Krivtsun Decl.") [Doc. 7-1] ¶ 7. When considering a Rule 12(b)(1) motion to dismiss, the court may consider evidence outside the pleadings, such as the Krivtsun Declaration, without converting the proceeding to one for summary judgment. See Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990).

F.4th 1302, 1305 (11th Cir. 2025). Congress also gave the Department of State ("State Department") discretion to conduct the "orderly administration" of the visa allocation system, providing that the "Secretary of State may make reasonable estimates of the anticipated numbers of visas to be issued during any quarter of any fiscal year within each of the [four family-sponsored preference visa] categories . . . and to rely upon such estimates in authorizing the issuance of visas." 8 U.S.C. § 1153(g).

A lawful permanent resident seeking to sponsor their foreign adult child for a family preference visa must file a Form I-130 with United States Citizenship and Immigration Services ("USCIS"), which is under the purview of the Department of Homeland Security ("DHS"). See 8 U.S.C. § 1154; 8 C.F.R. § 204.1(a)(1). If USCIS approves the Form I-130, USCIS sends the approved Form I-130 to the National Visa Center ("NVC"), which is under the purview of the State Department. See 8 C.F.R. § 204.2(a)(3). After the NVC receives the Form I-130, the foreign citizen child must submit a DS-260-Immigrant Visa Electronic Application, the required supporting documents, and necessary fees to the NVC. See 22 C.F.R. §§ 42.65, 42.67(a). Once the NVC receives these documents, the NVC determines the case to be "documentarily complete," and the foreign citizen

child is eligible to be scheduled for an appointment for an interview to make a visa petition before a consular officer. See 22 C.F.R. §§ 42.62, 42.67(a)(1), (a)(3).

Because family-sponsored preference visas are numerically limited, Congress directed that they be issued to eligible applicants in the order each visa petition was properly filed (generally considered the individual's "priority date"). 8 U.S.C. § 1153(e)(1); 22 C.F.R. §§ 42.51-42.55.[3] The visa interview will generally not be scheduled until the applicant's priority date is current (i.e. a family-preference visa is available), because if no visa is available, the consular officer may not issue the visa. See 8 U.S.C. § 1153(e)(1); 8 C.F.R. § 204.1(b); 22 C.F.R. § 42.53(a); id. § 42.54(a)(1). And because Congress limits the family-sponsored preference visas each year, a noncitizen may wait many years before a visa number becomes available. Scialabba v. Cuellar de Osorio, 573 U.S. 41, 50 (2014) ("[A] family-sponsored immigrant may stand in line for years—or even decades—just waiting for an immigrant visa to become available.").

According to the State Department's Foreign Affairs Manual ("FAM"), once the applicant' s priority date is current, the NVC schedules interviews "in the

[3] The State Department's Bureau of Consular Affairs publishes family-sponsored preference visa availability information each month in the Visa Bulletin, which enables applicants to determine their priority date. See, e.g., 22 C.F.R. § 42.51.

chronological order of the documentarily complete applicants" based "[u]pon visa availability" at the relevant embassy or consulate. 9 FAM 504.4-6(a).[4] The State Department's website counsels applicants that once they receive notification that a case is documentarily complete:

[4] The FAM is "a single, comprehensive, and authoritative source for the Department's organization structures, policies, and procedures that govern the operations of the State Department, the Foreign Service and, when applicable, other federal agencies." LIBRARY OF CONGRESS, *Foreign Affairs Manual - U.S. Department of State*, available at https://www.loc.gov/item/lcwaN0026575/ (last visited March 23, 2026). The FAM "convey[s] codified information to Department staff and contractors so they can carry out their responsibilities in accordance with statutory, executive and Department mandates." Id. The FAM "articulates" the State Department's "official guidance, including procedures and policies, on matters relating to Department management and personnel[.]" 22 C.F.R. § 5.5. "[A] a court may take judicial notice of government websites." Lamonte v. City of Hampton, 576 F. Supp. 3d 1314, 1327 (N.D. Ga. 2021) (citing Rule 201(b)(2) of the Federal Rules of Evidence (providing that courts may judicially notice facts that are not subject to reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.")); see also Ga. Ass'n of Latino Elected Officials, Inc. v. Gwinnett Cnty. Bd. of Registration & Elections, 36 F.4th 1100, 1123 (11th Cir. 2022) (taking judicial notice that the government website offers Gwinnett County voters fifteen languages other than English."); Horne v. Potter, 392 F. App'x 800, 802 (11th Cir. 2010) (affirming decision to take judicial notice of public records); Laroque v. Sec'y, Dep't of Homeland Sec., No. 6:20-CV-788-WWB-EJK, 2021 WL 7084102, at *2 (M.D. Fla. Oct. 22, 2021) (taking judicial notice of USCIS's decision on the plaintiff's Form I-485); Xiong v. Johnson, No. 2:20-CV-0045-66MRM, 2020 WL 5500215, at *1 (M.D. Fla. Sept. 11, 2020) (taking judicial notice of the plaintiff's approved I-485 application where such information was readily available and verifiable through the he USCIS website's 'case status online' tool).

> NVC will work with the appropriate U.S. Embassy or Consulate to schedule your interview appointment and will send you, your petitioner and your agent/attorney (if applicable) an email noting the appointment date and time. However, NVC cannot predict when your case will be scheduled for an interview. The U.S. Embassy or Consulate General tells NVC what dates they are holding interviews, and NVC fills these appointments in a first-in, first-out manner.

See U.S. DEPT. OF STATE, *Helpful Hints: IV Processing*, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-1-submit-a-petition/step-2-begin-nvc-processing/helpful-hints-iv-processing.html (last visited March 23, 2026). Following the interview, the consular officer must either issue or refuse the visa. 22 C.F.R. § 42.81(a).

Visa applicants "make" or "execute" their application by bringing the required paperwork to the in-person interview with a consular officer, affirming the information in the application is true, and biometrically signing the application under oath. 22 C.F.R. § 42.62(b)(1); 9 FAM § 504.1-3(a), (g); Karimova v. Abate, No. 23-5178, 2024 WL 3517852, at *1 (D.C. Cir. July 24, 2024).

### B. Plaintiffs' Family-Preference Visa Application

Nahar filed a I-130 Petition for Alien Relative with U.S. Citizenship and Immigration Services ("USCIS") on February 4, 2016, which was approved on December 6, 2021. Am. Compl. ¶ 14. On February 17, 2022, Hossain submitted a Form DS-260, Immigrant Visa Electronic Application and accompanying

documentation. Id. ¶ 15. On September 20, 2022, the NVC confirmed that that it had approved all of the required documents and that Hossain's case is documentarily qualified. Id. ¶ 16. In response to numerous subsequent inquiries regarding the status of Hossain's application, the NVC has indicated that the application is "documentarily complete, that no further information or documents are needed from the Plaintiffs, and that processing will take 60 days or an unknown period of time." Id. ¶ 19. Although the NVC determined that Hossain's application was "documentarily complete" on September 20, 2022, Hossain's priority date did not become current until May 1, 2024, as reflected in the May 2024 Visa Bulletin when a visa became available for Plaintiff. See U.S. DEPT. OF STATE, *Visa Bulletin for May 2024*, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2024/visa-bulletin-for-may-2024.html (last visited March 23, 2026).

### C. Procedural Background

The crux of Plaintiffs' Complaint is that Hossain's interview has not yet been scheduled within a reasonable time. Id. ¶ 2. Based on the foregoing, Plaintiffs filed the above-styled lawsuit on January 16, 2025, asserting that Defendants violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1),

because of Defendants' alleged failure to schedule Hossain's visa application interview within a reasonable amount of time. Id. ¶¶ 25-35.

Defendants filed their initial Motion to Dismiss on April 4, 2025, arguing that the Court lacks jurisdiction to hear this case and that, even if the Court did have subject matter jurisdiction, Plaintiffs have failed to state a viable claim. Mem. of Law in Supp. of Defs.' Mot. to Dismiss Pls.' Compl. ("Defs.' Initial Br.") [Doc. 7 at 3-26] at 12-25. The Court conducted a hearing on the matter on March 13, 2026 [Doc. 20]. At the hearing, counsel for Defendants informed the Court that a consular interview was scheduled for March 15, 2026. The Court ordered Defendants to file a notice with the Court by March 16, 2026, confirming if and when the consular interview takes place. Plaintiffs were ordered to respond to any notice by March 20, 2026. Subsequently, on March 19, 2026, Defendants filed a second Motion to Dismiss, representing that the consular interview was conducted on March 15, 2026, and that Hossain's visa application was rejected the same day. Defs.' Mem. of Law in Supp. of Mot. to Dismiss for Mootness & Lack of Jurisdiction ("Defs.' Second Br.") [Doc. 19 at 3-7] at 3-4 (citing Consular officer decision and refusal notice ("Refusal Notice") [Doc. 19-1] ("A U.S. consular officer has adjudicated and refused your visa application.")). No response was filed by Plaintiffs within the time permitted by the Court.

## II. LEGAL STANDARDS

### A. Lack of Subject Matter Jurisdiction

Under Rule 12(b)(1), a claim may be dismissed for "lack of jurisdiction over the subject matter." FED. R. CIV. P. 12(b)(1). "Facial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as true for the purposes of the motion." Lawrence, 919 F.2d at 1529 (quotations and citation omitted) (alterations accepted). In such cases, the plaintiff is "afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true." Id. (citing Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981)[5]). A court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." See id. (quoting Williamson, 645 F.2d at 412-413); see also Lee-Lewis v. Kerry, No. 2:13-CV-80, 2016 WL 6647937, at *3 (S.D. Ga. Nov. 8, 2016) (holding that a court is "free to weigh the evidence" outside the pleadings).

On the other hand, "factual attacks . . . challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

pleadings, such as testimony and affidavits are considered." McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007) (internal quotations omitted). "Under a factual attack, the Court is free to weigh the facts and is not required to view them in the light most favorable to the plaintiff." Am. Ins. Co. v. Evercare Co., 699 F. Supp. 2d 1355, 1358 (N.D. Ga. 2010), aff'd per curiam, 430 F. App'x 795 (11th Cir. 2011) (citing Carmichael v. Kellogg, Brown & Root Servs., Inc., 572 F.3d 1271, 1279 (11th Cir. 2009)). When subject matter jurisdiction is challenged on a motion to dismiss, the party asserting jurisdiction bears the burden of proof. Cypress Ins. Co. v. Jesse Batten Farms, LLC, 662 F. Supp. 3d 1337, 1344 (N.D. Ga. 2023) (quoting Murphy v. Sec'y, U.S. Dep't of Army, 769 F. App'x 779, 782 (11th Cir. 2019)).

### B. Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted). Thus, a claim will survive a motion to dismiss only if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

At the motion to dismiss stage, the court accepts all well-pleaded facts in the plaintiff's complaint as true, as well as all reasonable inferences drawn from those facts. McGinley v. Houston, 361 F.3d 1328, 1330 (11th Cir. 2004); Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). Not only must the court accept the well-pleaded allegations as true, but these allegations must also be construed in the light most favorable to the pleader. Powell v. Thomas, 643 F.3d 1300, 1302 (11th Cir. 2011). However, the court need not accept legal conclusions, nor must it accept as true legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678. Thus, evaluation of a motion to dismiss requires the court to assume the veracity of well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

## III. ANALYSIS

In their initial Motion to Dismiss, Defendants argue (1) that the Court lacks jurisdiction over Plaintiffs' claim in this case because scheduling Hossain's interview for the family preference visa is committed to agency discretion and there is no law compelling the government to schedule Hossain's interview by a date certain, and (2) even if the Court did have subject matter jurisdiction, Plaintiffs have failed to state a viable claim. Defs.' Initial Br. at 12-25. Plaintiffs oppose the Motion to Dismiss, arguing that "Defendants are unlawfully withholding action on Plaintiff Hossain's Application, and that Defendants have a duty to adjudicate the Application within a reasonable time under 5 U.S.C. § 555(b) [of the APA] and 22 C.F.R. § 42.81." Mem. of Law in Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n") [Doc. 12] at 5. Plaintiffs reason that

> 22 C.F.R. § 42.81 mandates that after a visa application has been properly completed and executed before a consular officer in accordance with the INA and implementing regulation, the consular officer must issue, refuse, or discontinue granting the visa. Proper completion and execution of the visa application creates the duty to issue, refuse, or discontinue granting the visa.

Id.

In Defendants' second Motion to Dismiss, Defendants point out that subsequent to the filing of the present lawsuit, Defendants conducted Hossain's consular interview and adjudicated the family preference visa application. Defs.'

Second Br. at 3-4. The Refusal Notice submitted with Defendants' second Motion to Dismiss states that "A U.S. consular officer has adjudicated and refused your visa application." Refusal Notice. Defendants argue that they have scheduled and conducted Hossain's consular interview and adjudicated Hossain's family preference visa application, all of the relief Plaintiffs seek in this case has been provided. Defs.' Second Br. at 2-3. Because Plaintiffs have received all the relief they are requesting in the Complaint, Defendants argue that this case is moot and the Court is without subject matter jurisdiction to hear it. Id. 4-6.

Plaintiffs did not respond to Defendants' Second Motion to Dismiss within the time directed by the Court. Accordingly, the Court deems the motion unopposed. See Kramer v. Gwinnett Cnty., 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) ("[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed"); LR 7.1B, NDGa. ("Failure to file a response shall indicate that there is no opposition to the motion."). Although Defendants' Second Motion is deemed unopposed, the Court cannot grant it without considering the motion on its merits. See Giummo v. Olsen, 701 F. App'x 922, 925 (11th Cir. 2017) (reversing the district court's grant of unopposed motions to dismiss where the court "neither provided any reason why the

plaintiffs' complaint failed to state a claim nor otherwise indicated that it had considered the sufficiency of the complaint's allegations.").

### A. Because Hossain's Consular Interview Has Been Conducted and the Visa Application Has Been Adjudicated, this Case is Moot, and the Court is Without Jurisdiction to Hear it.

"Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" TransUnion LLC v. Ramirez, 594 U.S. 413, 414 (2021). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings," meaning that there must always be an "actual, ongoing" controversy for a federal court to have subject-matter jurisdiction. Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990). A controversy exists if the plaintiff demonstrates that he has standing—that he has suffered or is likely to suffer an injury that (1) is concrete and particularized, (2) was or will be caused by the defendant, and (3) likely will be remedied by a favorable judgment. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). Put another way, "a plaintiff must demonstrate that he possesses a legally cognizable interest, or personal stake, in the outcome of the action." Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 71 (2013) (internal punctuation and citation omitted).

However, if after the suit is commenced, "an intervening circumstance deprives the plaintiff" of that personal stake "at any point during litigation, the

action can no longer proceed and must be dismissed as moot." Id. at 72. "[A]n action that is moot cannot be characterized as an active case or controversy." Adler v. Duval Cnty. Sch. Bd., 112 F.3d 1475, 1477 (11th Cir. 1997). "A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." Ethredge v. Hail, 996 F.2d 1173, 1175 (11th Cir. 1993). "When events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief, the case is moot and must be dismissed." Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs., 225 F.3d 1208, 1217 (11th Cir. 2000) ("Any decision on the merits of a moot case or issue would be an impermissible advisory opinion."). "In the immigration context, when a plaintiff is no longer eligible to receive the relief that he seeks, the district court is compelled to dismiss the case as moot." Gupta v. United States Attorney Gen., 798 F. App'x 606, 607 (11th Cir. 2020) (internal punctuation and citation omitted).

Plaintiffs brought this lawsuit seeking an order from this Court to compel Defendants to set "a time certain to forward Plaintiff HOSSAIN's Application to the Embassy and schedule the same for an interview." Am. Compl., Prayer for Relief. Defendants have submitted evidence that a consular officer conducted an interview with Hossain and refused her family preference visa. Because Plaintiffs

have received all of the relief requested in the Amended Complaint, there is no longer any live controversy remaining for this Court to consider. Accordingly, this case must be dismissed as moot. See Bathazi v. U.S. Dep't of Homeland Sec., 667 F. Supp. 2d 1375, 1378 (S.D. Fla. 2009) (finding a lawsuit brought to compel the adjudication of an immigration petition to secure permanent resident status was moot once USCIS adjudicated the petition and dismissing the lawsuit as moot); Kassama v. Chertoff, No. 1:08-CV-0860-WSD, 2008 WL 2227504, at *1 (N.D. Ga. May 27, 2008) (dismissing as moot lawsuit brought to compel USCIS to adjudicate immigration petition where the "challenged action underlying the Plaintiff's claims-the adjudication of his I-485 application-has been completed and thus cannot be decided through this lawsuit.").

### B. This Court Does Not Have Subject Matter Jurisdiction to Adjudicate a Dispute Wherein Plaintiffs Seek to Compel the Government to Perform a Discretionary Act.

Even if this case was not moot, the APA does not permit this Court to review the alleged unreasonable delay to perform a discretionary act. The APA "does not provide judicial review for everything done by an administrative agency." Hearst Radio v. F.C.C., 167 F.2d 225, 227 (D.C. Cir. 1948). In fact, the APA "preclude[s] judicial review of discretionary agency functions." Hidalgo Canevaro v. Wolf, 540 F. Supp. 3d 1235, 1241 (N.D. Ga. 2021) (citing 5 U.S.C.

§ 701 (providing that the APA does not apply to "agency action is committed to agency discretion by law.")). Instead, under the APA, a claim alleging that an agency has unlawfully withheld or unreasonably delayed agency action "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004). In other words, the APA "empowers a court only to compel an agency to perform a ministerial or non-discretionary act." Id. (internal punctuation and citation omitted).

Similarly, a court does not have jurisdiction under the Mandamus Act, 28 U.S.C. § 1361,[6] to order an agency to perform a discretionary act:

> Under 28 U.S.C. § 1361, otherwise known as The Mandamus Act, the district court has original jurisdiction over a mandamus action "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "[M]andamus is an extraordinary remedy which should be utilized only

[6] As to jurisdiction under the Mandamus Act, courts have explained that: "where . . . a plaintiff invokes the Court's mandamus jurisdiction to compel action but not to direct the exercise of judgment or discretion, mandamus jurisdiction is coextensive with the remedies available under the APA." Moreno v. Wolf, 558 F. Supp. 3d 1357, 1363 (N.D. Ga. 2021); see also Singh v. Mayorkas, 2024 WL 420124, at *2 (M.D. Tenn. Feb. 5, 2024) ("If the relief sought by plaintiffs through a writ of mandamus is essentially the same as that sought under the APA, the court may consider the claim under the APA.") (quotation omitted) (citing Indep. Mining Co. v. Babbit, 105 F.3d 502, 507 (9th Cir. 1997)). The Court therefore considers mandamus jurisdiction as coextensive with that provided under the APA.

> in the clearest and most compelling of cases." Carter v. Seamans, 411 F.2d 767, 773 (5th Cir. 1969).
>
> ***
>
> "The test for jurisdiction is whether mandamus would be an appropriate means of relief." Jones v. Alexander, 609 F.2d 778, 781 (5th Cir. 1980). Mandamus relief is only appropriate when: (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) "no other adequate remedy [is] available." Id. Put another way, a writ of mandamus "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." Heckler v. Ringer, 466 U.S. 602, 616 (1984).

Cash v. Barnhart, 327 F.3d 1252, 1257-58 (11th Cir. 2003); see also Norton, 542 U.S. at 63 ("The mandamus remedy was normally limited to enforcement of a specific, unequivocal command, the ordering of a precise, definite act about which an official had no discretion whatever.") (internal punctuation and citation omitted).

The Court is without jurisdiction to hear Plaintiffs' APA claim in this case because the action Plaintiffs seek to compel—the scheduling of a consular interview for Hossain's F2B family preference visa—is a matter left to governmental discretion. Plaintiffs maintain that "Defendants have a duty to adjudicate Plaintiffs' Applications within a reasonable period of time under 5 U.S.C. §555(b) and 22 C.F.R. § 42.81." Pls.' Opp'n at 7. However, neither 5 U.S.C. §555(b) nor 22 C.F.R. § 42.81 create a clear, non-discretionary duty to act.

Section 555(b) states in relevant part: "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. §555(b). This section "merely restates a principle of good administration." Att'y Gen.'s Manual on the Admin. Proc. Act 65 (1947); see also Norton, 542 U.S. at 63 (finding the reasoning in the Attorney General's Manual on the APA persuasive). Section 555(b) does not create a duty to do any specific act, let alone a duty to schedule a F2B family preference visa interview within a prescribed period of time. Sakhi v. Blinken, No. DLB-24-1376, 2025 WL 904141, at *5 (D. Md. Mar. 25, 2025) (finding that the "general directive" in Section 555(b) is not a "'specific, unequivocal command' from Congress to 'take a discrete agency action.'") (quoting Norton, 542 U.S. at 63-64); Yaghoubnezhad v. Stufft, 734 F. Supp. 3d 87, 102 (D.D.C. 2024) ("While [Section 555(b)] implies that the agency, at some point, must reach a final decision, it does not speak specifically to the duties of consular officers, and it uses the open-ended phrase 'within a reasonable time.'"); Ali v. United States Dep't of State, 676 F. Supp. 3d 460, 470 (E.D.N.C. 2023) ("5 U.S.C. 555(b) do[es] not create specific, non-discretionary duties."); Hi-Tech Pharmacal Co. v. U.S. Food & Drug Admin., 587 F. Supp. 2d 1, 9 (D.D.C. 2008) ("[T]he general directive of Section 555(b) is a far cry from the discrete agency

action that courts require when issuing an order compelling agency action unlawfully withheld or unreasonably delayed.") (citation and quotation omitted).

Similarly, 22 C.F.R. § 42.81 does not create a clear, non-discretionary duty to act under the facts alleged in this case. Section 42.81(a) instructs that "[w]hen a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa . . . or . . . discontinue granting the visa." 22 C.F.R. § 42.81(a). However, the State Department's regulations define "mak[ing] or fil[ing] an application for a visa" to require, *inter alia*, "personally appearing before a consular officer and verifying by oath or affirmation the statements contained on Form DS-230 or Form DS-260 and in all supporting documents, having previously submitted all forms and documents required in advance of the appearance and paid the visa application processing fee." 22 C.F.R. § 40.1(l)(2). Thus, a visa application has not been "properly completed and executed before a consular officer" until the applicant has "personally appear[ed] before a consular officer." Mueller v. Blinken, 682 F. Supp. 3d 528, 537 (E.D. Va. 2023). "If § 42.81(a) imposes any kind of duty to act on a visa application, that duty only attaches after an applicant has appeared before a consular officer." Id. Assuming the veracity of the facts alleged in the Amended

Complaint, Plaintiff Hossain has not yet appeared before a consular officer and has not yet verified by oath or affirmation the statements contained in her visa application. Accordingly, based on the facts alleged in the Amended Complaint, her visa application has not been properly completed and executed and, therefore, there is no duty to act under 22 C.F.R. § 42.81(a).

Because Plaintiffs have failed to identify a clear, non-discretionary duty to act on the part of Defendants, this Court does not have subject matter jurisdiction to hear Plaintiffs' claim under the APA. See Hidalgo Canevaro, 540 F. Supp. 3d at 1243 (holding that the court had no subject matter jurisdiction to enter an order mandating action where there the government had no non-discretionary duty to act).

### C. Plaintiffs Have Failed to State a Claim Pursuant to the APA.

Even if this case were not moot and even if Plaintiffs had established that Defendants have a nondiscretionary duty to act on Hossain's visa application, Plaintiffs have not shown that Defendants' alleged failure to act has been "unreasonably delayed." See 5 U.S.C. § 706(1). To assess whether agency action has been "unreasonably delayed," courts look to the factors described in

Telecommunications Rsch. & Action Ctr. v. F.C.C., (the "TRAC factors"), which are:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed'.

750 F.2d 70, 80 (D.C. Cir. 1984) (quotation marks and citations omitted). The Eleventh Circuit has not expressly adopted the TRAC factors, but other circuits and most lower courts have found the factors to be helpful in analyzing unreasonable delay claims against the federal government. See, e.g., Gonzalez v. Cuccinelli, 985 F.3d 357, 375 (4th Cir. 2021) (applying the TRAC factors); Hidalgo Canevaro, 540 F. Supp. 3d at 1244 (same); Patel v. Cissna, 400 F. Supp. 3d 1373, 1383 (M.D. Ga. 2019) (same).

### 1. TRAC Factor 1

The first TRAC factor, whether the time the agency took to make a decision followed a "rule of reason," requires the Court to inquire "into whether there is any rhyme or reason for the Government's delay—in other words, whether the agency's response time is governed by an identifiable rationale." Palakuru v. Renaud, 521 F. Supp. 3d 46, 50-51 (D.D.C. 2021) (internal punctuation and citation omitted). Defendants represent that the State Department "has a 'first in, first out' process that it uses to schedule interviews when visas become available and the case is documentarily complete." Defs.' Initial Br. at 22 (citing 8 U.S.C. § 1153 ("Immigrant visas . . . shall be issued to eligible immigrants in the order in which a petition on behalf of each such immigrant is filed.")).

Courts considering this policy, including courts in this district, have found that the "USCIS's process of 'first in, first out' to be a rule of reason." Anid Infosoft LLC v. Blinken, No. 1:22-CV-4721-TWT, 2023 WL 7312488, at *5 (N.D. Ga. Nov. 3, 2023); see also Hidalgo Canevaro, 540 F. Supp. 3d at 1244-45 (finding that the "first in, first out basis" for processing visa applications was a rule of reason); Muvvala v. Wolf, No. 20-cv-02423-CJN, 2020 WL 5748104, at *3 (D.D.C. Sept. 25, 2020) ("Other federal courts have held that this first-in, first-out method of adjudication constitutes a 'rule of reason' and satisfies the first TRAC

factor."). Indeed, it would appear that if this Court were to grant Plaintiffs' request to order the adjudication of Hossain's application outside this order, it would undermine this rule of reason by "simply moving all other petitioners back one space and producing no net gain." Alvarado v. Wolf, No. 1:20-CV-04098-SCJ, 2021 WL 3828644, at *7 (N.D. Ga. Aug. 25, 2021) (internal punctuation and citation omitted).

Whether Defendants' actions satisfy the rule of reason

> cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part, as we have said, upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency.

Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1102 (D.C. Cir. 2003). Accordingly, it is informative—but not dispositive—that the delay between Hossain's priority date became current (May 1, 2024) and the present delay (approximately 19 months) is a shorter period of time than other immigration delays that were found to be reasonable.[7] See, e.g., Palakuru, 521 F. Supp. 3d at 52 (finding that two-year delay in processing petition for visa was not unreasonable);

---

[7] Even if the Court accepted Plaintiffs argument that "[t]he delay in this case has been over two years and seven months," Pls.' Opp'n at 8, that delay is not unreasonable as a matter of law.

Bagherian v. Pompeo, 442 F. Supp. 3d 87, 95 (D.D.C. 2020) (analyzing the TRAC factors and finding that the twenty-five-month delay was not unreasonable as a matter of law.); Ghadami v. United States Dep't of Homeland Sec., No. 19-00397 (ABJ), 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) ("[M]any courts evaluating similar delays have declined to find a two-year period to be unreasonable as a matter of law."); Skalka v. Kelly, 246 F. Supp. 3d 147, 154 (D.D.C. 2017) (collecting cases concluding that delays of four and a half, five, and ten years in adjudicating a visa application were not unreasonable in different immigration contexts). Accordingly, this factor favors Defendants.

### 2. TRAC Factor 2

The second TRAC factor analyzes whether Congress provided any timetable or other indication of the speed with which it expects the agency to proceed. This factor is inapplicable here because Congress has not set a specific timetable for the State Department to schedule a visa interview after an applicant's priority date has become current. See Barrios Garcia v. U.S. Dep't of Homeland Sec., 25 F.4th 430, 453 (6th Cir. 2022) ("[W]hen no statute sets a deadline for an agency action, the second TRAC factor is not relevant to an 'unreasonably delayed' analysis."); Throw v. Mayorkas, No. 3:22-CV-05699-DGE, 2023 WL 2787222, at *3 (W.D. Wash. Apr. 5, 2023) ("And the Court can find no statutory or regulatory obligation

requiring the State Department to schedule a consular interview by a date certain."); Tekle v. Blinken, No. 21-CV-1655 (APM), 2022 WL 1288437, at *3 (D.D.C. Apr. 29, 2022) ("Congress did not provide a statutory deadline to complete processing or adjudication of visa applications. In fact, Congress has given the agencies wide discretion in the area of immigration processing.") (internal quotation and citation omitted). Because Congress has not given a timetable, it does not supply content for the rule of reason and is inapplicable to this case.

**3. TRAC Factors 3 and 5**

The third and fifth factors involve the nature of delays and any prejudice suffered therefrom. Plaintiffs allege that they have suffered

> significant financial and emotional hardships as a result of the unreasonable period of time that Plaintiff Hossain's case has been pending. Plaintiff Nahar has been forced to choose between separation from her daughter and living in Bangladesh. Plaintiff Hossain is thirty-two (32) years of age and cannot get married, despite cultural customs favoring early marriage, if she wants to remain eligible for this immigration benefit. Plaintiff Nahar now struggles with mental health issues, such as anxiety and depression, as a result of the delay in this case affecting her both personally and professionally.

Pls.' Opp'n at 10-11. The Court empathizes with Plaintiffs, "and [P]laintiffs' interest in receiving a decision is undeniably significant." Ghadami, 2020 WL 1308376, at *9. However, presumably every family preference visa applicant "is

in the same position, and thus a juridically-sanctioned re-ordering of USCIS's process would net no prioritization of human welfare." Hidalgo Canevaro, 540 F. Supp. 3d at 1245. Accordingly, the Court finds that these factors are neutral.

### 4. TRAC Factor 4

The fourth TRAC factor considers how expediting Hossain's visa application might impede other agency priorities and "carries the greatest weight in many cases[.]" Milligan v. Pompeo, 502 F. Supp. 3d 302, 319 (D.D.C. 2020). "Courts have generally found that the fourth factor favors the Department of State because resource-allocation decisions simply do not lend themselves to judicial reordering of agency priorities." Mueller, 682 F. Supp. 3d at 539. Even when all other TRAC factors lie in a plaintiff's favor, courts have refused to grant relief where entering "a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain." Mashpee Wampanoag Tribal Council, 336 F.3d at 1100 (alterations omitted). Defendants contend that the fourth factor favors them because granting Plaintiffs' request would simply allow Hossain to "cut the line" and Plaintiffs do not have the right to do so. Defs.' Initial Br. 24-25. Plaintiffs contend that there is insufficient evidence before the Court as to where exactly Hossain's application is in the queue and Defendants' argument assumes "without any factual basis that the Plaintiffs'

Visa Application is not already at the 'front of the line.'" Pls.' Opp'n at 11. However, Plaintiffs have not pleaded any facts that would justify "shifting existing agency priorities," which their lawsuit would necessarily require. Mueller, 682 F. Supp. 3d at 540 (citation and quotation omitted).

Irrespective of where Hossain's application is in the queue of family preference visa applications, it is beyond dispute that "if the court were to grant the relief [Plaintiffs' seek], it would divert resources from other processing priorities to [Plaintiffs' application]. The court cannot override the agency's 'unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way.'" Tekle, 2022 WL 1288437, at *4 (quoting Ghadami, 2020 WL 1308376, at *9); see also Mueller, 682 F. Supp. 3d at 540 ("But what the Court can conclude at this stage, without discovery, is that a judicial order putting the plaintiffs at the head of the queue would simply move all others back one space and produce no net gain.") (internal punctuation and citation omitted).

Because entering an order expediting Hossain's application would necessarily require a juridically-sanctioned re-ordering of USCIS's process and negatively affect competing family preference visas, the Court finds that the fourth factor weighs in favor of Defendants. See Mueller, 682 F. Supp. 3d at 540 ("Given

that the plaintiff has pleaded no facts that would warrant such a reordering of the queue, a court order in Plaintiff's favor would shift existing agency priorities without justification. Thus, TRAC factor four weighs in favor of the Secretary.") (internal punctuation and citation omitted); see also Anid Infosoft LLC, 2023 WL 7312488, at *6 (finding that the fourth TRAC factor weighed against visa applicants because granting the requested relief "would simply cause other people who have applied for . . . visas to suffer the same effects that the Plaintiffs have alleged here."); Alvarado, 2021 WL 3828644, at *8 (finding that the fourth TRAC factor disfavored plaintiffs where granting the requested relief would simply bump their applications to the front of the queue); Hidalgo Canevaro, 540 F. Supp. 3d at 1245 ("Thus, the effect of their requested relief would be to further delay "agency activities of a higher or competing priority"—eligibility determinations for applications "ahead" of Plaintiffs in line. The Court cannot justify prioritizing Plaintiffs' interests over the interests of these applicants.").

### 5. TRAC Factor 6

The final TRAC factor considers any alleged impropriety by the agency. Plaintiffs acknowledge that they "have not alleged any impropriety" on the part of Defendants. Pls.' Opp'n at 12. Where there is no allegation of any improper motive on the part of Defendants, the sixth factor is neutral. See Tekle, 2022 WL

1288437, at *5 ("The final TRAC factor—the presence of impropriety—favors neither side, as Plaintiff concedes that there is no bad faith in the Government's delay."). Because there is no allegation or indication of impropriety on the part of Defendants, the sixth factor is neutral.

In sum, TRAC factors one and four favor Defendants while the remaining factors are neutral or inapplicable. Accordingly, a careful balancing of all six factors together leads the Court to conclude that Defendants' alleged delay does not warrant judicial intervention and, accepting the veracity of the allegations in the amended Complaint, Plaintiffs have failed to allege a plausible cause of action at this time under either the APA or the Mandamus Act because Defendants' alleged action has not been unlawfully withheld or unreasonably delayed.

Applying the TRAC factors, courts have routinely rejected and dismissed claims similar to those advanced by Plaintiffs here. Anid Infosoft LLC, 2023 WL 7312488, at *5-6 ("Since none of the TRAC factors favor the Plaintiffs, the Court will grant the Defendants' Motion to Dismiss and dismiss the Anid Plaintiffs' claim of unreasonable delay against USCIS."); Memon v. Blinken, No. 1:22-cv-0754 (CKK), 2023 WL 1438396, at *1 (D.D.C. Feb. 1, 2023) (applying TRAC factors to dismiss complaint alleging thirty-four month delay in submitting visa application to NVC, noting "[a]s the State Department faces a substantial backlog

of visa applications, lawsuits to speed review have become legion in this jurisdiction. Like most, Plaintiffs in this action ask to cut the line in front of less fortunate applicants without the means to secure counsel."); Bega v. Jaddou, No. 1:22-cv-02171 (BAH), 2022 WL 17403123, at *6-8 (D.D.C. Dec. 2, 2022) (applying TRAC factors and dismissing complaint alleging over three years of delay in adjudicating visa application); Begum v. United States Dep't of State, No. 1:22-cv-478-JMC, 2022 WL 16575703, at *7-9 (D. Md. Oct. 31, 2022) (applying TRAC factors and dismissing complaint alleging an approximate two-year delay in scheduling a visa interview); Hidalgo Canevaro, 540 F. Supp. 3d at 1243-45 (applying TRAC factors to find alternatively that plaintiffs failed to state a claim for unreasonable delay in adjudicating visa applications); Alvarado, 2021 WL 3828644, at *6-8 (same).

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendants' Motions to Dismiss [Docs. 7 and 19] are **GRANTED**.

The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED** this 23rd day of March, 2026.

MARK H. COHEN
United States District Judge